**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re: | ) |
| | ) |
| ANTHONY D. PETTEGROW and | )   Chapter 11 |
| JOSETTE G. PETTEGROW | )   Case No.: 25-10186 |
| Debtors. | ) |

**REPLY IN SUPPORT OF MOTION TO DISMISS CASE PURSUANT TO**
**11 U.S.C. § 1112(b)**

NOW COMES Lobster 207, LLC ("L207") and files this Reply in support of its *Motion to Dismiss Case Pursuant to 11 U.S.C. § 1112(b)* (the "Motion") [D.E. # 14]. The *Debtors Anthony D. Pettegrow and Josette G. Pettegrow's Opposition to Motion to Dismiss Case* (the "Opposition") while long on snark, sarcasm and outright vitriol[1], provides little basis to deny the relief requested by L207 in the Motion.

**A.    Bad Faith Is A Basis For Dismissal Under 11 U.S.C. § 1121(b).**

The Debtors begin by arguing that "consistency, predictability and the plain language of the Code" require that the Motion be dismissed because "[j]ust a few short years ago, this Bankruptcy Court in *Dean* unequivocally and strongly found and determined that 'bad faith' does not constitute 'cause' for purpose of 1112(b) of the Code . . . ." Motion, ¶ 36. According to the Debtors, "that's the end of it - assuming consistency, predictability, and fidelity to the plain language of the Code remain important judicial goals, mean anything, and can guide practitioners in advising clients contemplating a Chapter 11 filing." Opposition, ¶ 36. Not so fast.

---

[1]    The tone of the Debtors' Opposition is completely inappropriate. Among other things, it cites to a long-concluded case before this Court, *In re Dean*, Ch. 11, 20-20427, not because it provides any guidance for the matter before the court (more on this later), but as pretext to make deeply nasty, vituperative and personal attacks on both the firm that represented L207 in the underlying case, McCloskey Mina, Cuniff & Frawley (Opposition, fn. 6), as well as L207's bankruptcy counsel, Marcus Clegg (*id.*, fn. 7, ¶¶ 34-38). While this conduct would be inexcusable under any circumstances, it is made worse by the fact that these salvos add nothing to the issue of whether the Debtors' case should be dismissed for cause. L207 and counsel intend to address this chronic (as the Court is only too aware), unnecessary and unseemly conduct with the Court at the appropriate time and place. Given that (a) the purpose of replies is to respond to relevant arguments and issues raised in oppositions; and (b) the page limitations imposed by Local Rule 9014-1(d)(1), L207 and the counsel will refrain from additional commentary on the Debtor's proposed special counsel's conduct at this time.

1

It is true that in *Dean*, Judge Fagone declined to dismiss the debtor's chapter 11 case for bad faith in an order dated January 29, 2021 [*Dean*, D.E. # 72].  However, later that year, and as set forth in the Motion (¶¶ 27, *et seq.*), the 1st Circuit Bankruptcy Appellate Panel (the "BAP") determined that bad faith was a basis to find cause to dismiss a bankruptcy case in *In re La Trinidad Elderly LP SE*, 627 B.R. 779, 800 (BAP 1st Cir. 2021). And it did so in no uncertain terms: "We are persuaded by the abundant, well-reasoned authority holding that lack of good faith can constitute cause for dismissal of a chapter 11 petition under § 1112(b)," *La Trinidad Elderly*, 627 B.R. at 800.

Importantly, one of the BAP panelists who rendered that decision was Chief Judge Cary, who is also assigned to the case at bar. So while BAP decisions are not binding *per se* on bankruptcy courts, L207 is comfortable that the *La Trinidad* decision, which was issued months after the *Dean* decision, was authored by the Judge overseeing this matter, and since been cited favorably in multiple decisions[2], establishes that bad faith is a proper ground to dismiss the Debtors' case.

**B.     This Is A Bad Faith Case.**

As a threshold matter, the Court should decline the Debtors' invitation to engage in revisionist history.[3] The fact of the matter is the Debtors agreed to entry of the Consent Judgment. They admitted that they converted L207's property. Consent Judgment, p. 2. They agreed that their son, with their assistance, engaged in defalcation as a fiduciary of L207. *Id.* They admitted that they willfully and maliciously caused harm to L207. *Id.* And they agreed that their debts to L207 would be nondischargeable in bankruptcy. *Id.* Everything else, including the Debtors' claim in the Opposition

---

[2]     Including a recent decision in this Court. *In re Mark Real Est. Holdings*, LLC, No. 25-20100, 2025 WL 2347457, at *1 (Bankr. D. Me. Aug. 13, 2025).

[3]     Ironically, some of the attempts to whitewash the Debtors' prepetition conduct and the travel of the underling USDC case are simply wrong. For example, the Debtors dedicate several paragraphs to describing how the Debtors' trial counsel, Troutman, Pepper Hamilton Sanders, LLP ("Troutman"), allegedly "defeat[ed] and debunk[ed] L207's baseless and unsuccessful" efforts to assert RICO claims against them. Opposition, ¶¶ 54-56. In fact, Troutman did no such thing; the RICO claims, which were not presented in the arbitration, were preserved for trial and as a result of Warren Pettegrow's "resounding defeat" (Judge Walker's words (*see* Motion, fn. 2 and citations therein)) at an earlier arbitration, he was going to be precluded from relitigating many of the facts necessary for L207 to prove the RICO violation.

2

that none of this really means anything and was instead part of a masterful settlement stratagem (Opposition, ¶¶ 66-68), is irrelevant. Simply put, the Debtors have consented to a Federal Court judgment holding them liable for multiple extremely bad acts and that that judgment is not dischargeable in bankruptcy. As much as the Debtors would like to handwave away this inconvenient fact, it is central to both the Chapter 11 case and the current Motion.

This needs to be kept front of mind because this matter was, and remains, a two-party dispute between the Debtors and L207. The Debtors schedules show that they have nine (9) unsecured creditors.[4] Three of them are real estate taxes owed. According to the Debtors' testimony at their 341 meeting, none of these are late or risk triggering a tax foreclosure. Aside from the Troutman claim[5], the other five unsecured claims total $807.17 and all appear to relate to common utility or medical expenses. If any of these creditors were clamoring for payment, the Debtors could presumably pay them off easily with the $16,000-plus in liquid assets they have in hand or from their income.[6] They also list three secured creditors, aside from L207[7], all of whom are mortgagees on certain parcels of the Debtors' expansive real estate portfolio. There is no evidence that any of these obligations are in arrears or that the Debtors cannot service these debts. *See* Schedule J, showing positive cash flow after payment of expenses. At their 314 meeting, the Debtors confirmed that the impetus for their filing was their ongoing dispute with L207. Moreover, they testified that Troutman has not initiated any lawsuit or collection proceedings against them to collect their (L207 lawsuit-related) debt. This case was filed to frustrate L207's collection actions. Full stop.

---

[4] One of whom, Richardson, Whitman, Large & Badger, appears to be a notice party only with claim amount listed.
[5] Which claim itself arises directly from that two-party dispute.
[6] More on the income below. Testimony at the 341 meeting made it clear that their Schedule I is wildly inaccurate and likely misstates monthly income by tens of thousands of dollars.
[7] The Debtors spill much ink discussing how L207 will soon be an unsecured creditor as a result of their pending adversary proceeding to avoid L207's recordation of its writs of execution. L207 directs the Court's attention to its *Motion to Dismiss* complaint filed in that adversary proceeding on November 3.

3

The First Circuit has held that while "[f]iling a bankruptcy petition to frustrate creditors does not <u>by itself</u>" require a finding of bad faith, given that Chapter 11, among other things, provides honest but unfortunate debtors with breathing room to reorganize, a lack of a reorganizational purpose suggests dismissal for cause is warranted." *Fields Station LLC v. Capitol Foods Corp. of Fields Corner (In re Capitol Food Corp. of Fields Corner),* 409 F.3d 21, 25 (1st Cir. 2007) (emphasis added). Here, there is absolutely no evidence that the Debtors have a reorganizational purpose (aside from frustrating L207 which is not, standing alone, a valid rationale). As discussed above and as evidenced by the Schedules and proclaimed by the Debtors themselves in the Opposition, "their assets far outstrip their actual (and then potential) liabilities."[8] Opposition, ¶ 64.

Moreover, the Debtors allegations that they are illiquid do not bear up under scrutiny. They suggest that they have net monthly income of approximately $5,000. Opposition, ¶ 73. <u>This is not accurate</u>. The Debtors together received gross income in 2024 of more than $800,000 or approximately $66,700 per month.[9],[10] At their 341 meeting, the Debtors testified that the income in Schedule I only reflected wages and did not include other income, represented by TBLP draws and distributions. As such, assertions that the Debtors have little or no cash flow should be taken with a giant grain of salt, if not outright disregarded.

The Debtors' claims to want to avoid a "fire sale" that would "liquidate their valuable assets for the benefits of one eventually-unsecured debtor to the detriment of all others" (*e.g.,* Opposition, ¶

---

[8] The discrepancy between assets and liabilities is even more lopsided that the Debtors' schedules indicate. Note that the Debtors list interests in 3 businesses, including their employer, Trenton Bridge Lobster Pound, Inc. ("TBLP"). Schedule A/B at q. 42. But they list the value of their ownership interests in the same as $0.00. Plainly that is not the case because, among other things, TBLP paid the Debtors over $800,000 in salary, draws and distributions in 2024. Statement of Financial Affairs, q. 4 (the Opposition incorrectly asserts that they had $410,600 in gross income in 2024, that number fails to account for Anthony Pettegrow's $393,100 in income). Any business that can pay its owners that much money in a year is a valuable asset in and of itself.

[9] The SOFA lists zero income for 2023. The Debtors testified at the their 341 meeting that this was inaccurate.

[10] Given the Debtors' Schedule I monthly expenses of $8,400, which translates to $100,800 in annual expenses, L207 cannot help but wonder where the delta between that number and the net income from over $800,000 in gross income last year went. Certainly not to pay Troutman or L207.

4

57) are also spurious. The Debtor has over $11 million in assets, including sixteen (16) parcels of real estate.[11] How would paying L207 be detrimental to other creditors (none of whom other than Troutman appear to be anything but ordinary course creditors with *de minimis* claim) when the Debtors are not in any sort of financial distress and have more than enough assets to satisfy all of their creditors outside of bankruptcy? *See In re Integrated Telecom Express, Inc.,* 384 F.3d 108, 129-30 (3rd Cir. 2004) ("Because [the debtor] was not in financial distress, its Chapter 11 petition was not filed in good faith as it could not–and did not–preserve any value for [the debtor's] creditors that would have been lost outside of bankruptcy.")

Finally, what sort of plan can the Debtors propound that does anything to benefit anyone but them personally? Assuming that they are correct and L207 is eventually relegated to unsecured status (which L207 does not concede), it will need to be treated the same as other unsecured creditors. Are the Debtors going to propose plan that will term out the Debtors' $120.00 Spectrum and $300.43 Versant bills over a number of years, together with L207 and Troutman? Of course not; any such plan could not pass muster under, *inter alia*, § 1129(a)(3). Moreover, and contrary to the Debtors' assertions, the filing of the petition did not stop interest, costs and collections arising from L207's nondischargeable claim from accruing post-petition and L207 will be able to pursue that from the Debtors (but not their estate). *E.g., In re* Cousins, 209 F.3d 38, 40-41 (1st Cir. 2000; *see* Motion, ¶ 37 (and cases cited therein).

This Chapter 11 case was not filed with any valid rehabilitative purposes in mind. It will not result in a plan that will benefit any of its creditors. Instead the fully solvent Debtors look to use the tools provided by the Code to improperly frustrate L207's efforts to collect on its nondischargeable debt. This is the essence of bad faith and the case must be dismissed for cause.

---

[11] To say nothing of other real estate owned by their entities, such as Pettegrow Properties, LLC, Winter Harbor Marine, LLC and Anchor Avenue, LLC.

Dated: November 5, 2025                     By: /s/ David C. Johnson
                                                                       David C. Johnson, Esq.
                                                                       Brendan T. Barry, Esq.

                                                                       Attorneys for Lobster 207, LLC

                                                                       MARCUS|CLEGG
                                                                       16 Middle Street, Suite 501
                                                                       Portland, ME  04101
                                                                       (207) 828-8000
                                                                       bankruptcy@marcusclegg.com

## CERTIFICATE OF SERVICE

    I, David C. Johnson, hereby certify that I am over eighteen years old and caused a true and correct copy of the foregoing document upon all parties requesting service of pleadings in this case on the Court's CM/ECF facility, on the 5th day of November, 2025.

                                                                       /s/ David C. Johnson
                                                                       David C. Johnson